# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IAN WRIGHT, | : | |
|     Plaintiff, | : | CASE NO. 3:17-cv-1917 (MPS) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BIBENS, et al. | : | |
|     Defendants. | : | November 1, 2018 |

**RULING ON MOTION FOR SUMMARY JUDGMENT (ECF No. 24)**

On November 16, 2017, the plaintiff, Ian Wright, a prisoner currently confined at the Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, filed a complaint under 42 U.S.C. § 1983 against several Connecticut Department of Correction ("DOC") officials. He claimed that the defendants violated his rights under the First and Eighth Amendments to the United States Constitution for denying him "common fare" vegetarian meals in accordance with his religious beliefs during a four-day period at Corrigan. Compl. (ECF No. 1). The Court initially dismissed the complaint without prejudice because the plaintiff failed to allege facts showing each defendant's personal involvement in the constitutional deprivations. Initial Review Order (ECF No. 13). The plaintiff thereafter filed an amended complaint with additional factual allegations. Am. Compl. (ECF No. 16). After reviewing the amended complaint, the Court permitted the plaintiff's First Amendment claim to proceed against one of the defendants, Food Service Supervisor William Jackson, in his individual capacity for damages. Ruling on Mot. to Reopen and Review of Am. Compl. (ECF No. 17). The Court dismissed all other claims. *Id.* The defendant answered the amended complaint on May 15, 2018. Answer (ECF No. 21).

On July 3, 2018, the defendant filed the instant motion for summary judgment on the plaintiff's sole remaining claim. Mot. for Summ. J. (ECF No. 24); Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 24-1). He argues that (1) the plaintiff's First Amendment free exercise of religion claim fails as a matter of law, (2) the plaintiff has failed to establish the defendant's personal involvement in any constitutional violation, and (3) he is entitled to qualified immunity. Mot. for Summ. J. The defendant supplemented his motion with his affidavit, copies of institutional polices regarding the food service at DOC facilities, and a Local Rule 56(a)1 Statement of Facts (ECF Nos. 24-2 – 24-5). The Court then ordered the plaintiff to respond to the defendant's motion with a written memorandum and a Local Rule 56(a)2 Statement of Facts. *See* Order No. 29.

The plaintiff filed an opposition to defendant's motion on August 9, 2018 arguing that there are genuine issues of material fact with respect to his First Amendment claim and the defendant's personal involvement and that the defendant is not entitled to qualified immunity. Pl.'s Resp. to Def.'s Mot. Summ. J. (ECF No. 30); Mem. of Law in Obj. to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 30-1). He supplemented his opposition with several exhibits (ECF No. 30-2), including his own affidavit and documents related to his religious affiliation and diet necessities, and a "Statement of Disputed Material Issues" (ECF No. 30-3).

Because the Court agrees with the defendant that the First Amendment claim fails on the summary judgment record, the Court will GRANT the motion for summary judgment.

I.      Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of alleged factual dispute will not defeat summary judgment motion).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curium*) (internal quotations omitted; citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  The nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968) (nonmoving party must submit sufficient evidence supporting factual dispute that will require factfinder to resolve differing versions of truth at trial).

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in its favor."

*Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted).

Where one party is proceeding *pro se*, the Court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

## II. Factual Allegations

The Court finds the following facts from the amended complaint, the defendant's Local Rule 56(a)1 Statement ("Def.'s Stmt.") (ECF No. 24-5), the plaintiff's "Statement of Disputed Material Issues"[1] ("Pl.'s Stmt.") (ECF No. 30-3), and the exhibits on record.

The plaintiff was transferred from Cheshire Correctional Institution to Corrigan on September 22, 2017. Def.'s Stmt. ¶ 1; Pl.'s Stmt. ¶ 1. The plaintiff is a member of the Rastafarian religion, which requires its practitioners to adhere to a vegetarian diet. Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2. Since entering DOC custody in 2000, the plaintiff has been approved to participate in the common fare meal program under DOC Administrative

---

[1] The defendant correctly notes in his reply that the plaintiff's "Statement of Disputed Material Issues" does not fully comply with Local Rule 56(a)2. Def.'s Reply at 1-3. It does not correspond with the numbered paragraphs in the defendant's Local Rule 56(a)1 Statement and admit or deny the facts asserted therein. *See* D. Conn. L. R. Civ. P. 56(a)2. Although the plaintiff's failure to comply with the Local Rules of Civil Procedure is not excusable, the Court, for purposes of only this case, will accept his "Statement of Disputed Material Issues" to the extent it asserts facts which contradict the defendant's Local Rule 56(a)1 Statement. As shown below, the plaintiff's statement and supporting evidence do not cure the deficiency in his First Amendment claim.

Directive 10.18. Pl.'s Stmt. ¶ 3; Pl.'s Ex. 7 (ECF No. 30-2 at 54). A common fare meal is defined as "a meatless meal intended to accommodate those inmates whose religious dietary needs cannot be met on the master menu." Def.'s Ex. 1, Attach. B (ECF No. 24-2 at 16). In order to participate in the common fare meal program, an inmate must submit an application to the food service department at the facility in which he is housed. Def.'s Stmt. ¶ 21. The Food Service Supervisor IIII, who is responsible for ensuring compliance with the common fare policy, then approves or denies the application. *Id.* at ¶¶ 22-24; Def.'s Ex. 1 (Jackson Aff.) ¶ 10; Def.'s Ex. 1, Attach. B. If approved, the inmate is then placed on the list to receive common fare meals. Def.'s Stmt. at ¶¶ 23-24. District Food Service Managers and the Director of Food Services also conduct reviews of the facility's common fare policy. Def.'s Ex. 1, Attach. B.

From September 22 to September 27, the defendant worked as the Food Service Supervisor II at Corrigan. Def.'s Ex. 1 (Jackson Aff.) ¶ 4. His duties included monitoring and supervising inmates in the preparation of meals, food inspection, receiving orders from vendors, and maintaining inventory and cleanliness. *Id.* During those dates, the defendant worked from 10:30 a.m. to 6:45 p.m. and was not involved in the preparation or service of breakfast or lunch meal trays.[2] *Id.* at ¶ 16. If the defendant receives information that an inmate has requested a common fare dinner, his common practice is to check the facility records and verify whether that inmate is on the approved list of common fare meal recipients. *Id.* at ¶ 15. If not, the defendant would inform the

---

[2] The plaintiff disputes that the defendant was not involved in the preparation or service of lunch meals at Corrigan from September 22 to September 27, although he recites no facts to suggest that he has personal knowledge on this issue. Pl.'s Mem. at 8; Pl.'s Stmt. ¶¶ 7, 18.

inmate or custody official of the common fare application process. *Id.* As Food Service Supervisor II, the defendant contends that he is not responsible for approving or denying applications for common fare meal participation;[3] *id.* at ¶ 9; but the plaintiff argues that this statement is untrue. Pl.'s Mem. at 8.

Upon his transfer to Corrigan on Friday, September 22, 2017,[4] the plaintiff informed intake officials that he had been approved to receive common fare meals because of his religious dietary restrictions and that he would like to continue to receive such meals while at Corrigan. Def.'s Stmt. ¶¶ 3, 13; Pl.'s Stmt. ¶ 4. That day, the plaintiff received a fish meal tray, which is always served on Fridays and conforms to both regular meal service and common fare policy. Def.'s Stmt. ¶ 13; Def.'s Ex. 1 (Jackson Aff.) ¶ 12. The next day, however, the plaintiff was served a regular meal tray for lunch and dinner, which he refused because of his religious diet restriction. Def.'s Stmt. ¶ 6; Pl.'s Stmt. ¶¶ 5-6.[5] He asked the on-shift correction officer to contact the defendant because he was supposed to receive common fare meals and he needed one to take his medication. Def.'s Stmt. ¶ 6; Pl.'s Stmt. ¶ 7. The officer then called the defendant, who informed him that the plaintiff was not on the approved list of common fare inmates. Def.'s Stmt. ¶ 7; Pl.'s Stmt. ¶ 7. The same issue occurred on September 24, and when the correction officer inquired about the plaintiff's meal status, the

---

[3] The DOC's description of the common fare meal program states that the Food Service Supervisor III is responsible for ensuring inmate and staff compliance with the program. Def.'s Attach. B.

[4] The Court takes judicial notice that September 22, 2017 was a Friday.

[5] For breakfast, all inmates receive the same meal, and all breakfast items conform to the common-fare program. The plaintiff does not dispute this. Def.'s Stmt. ¶ 12; Def.'s Ex. 1 (Jackson Aff.) ¶ 13.

6

defendant again informed him that the plaintiff had not been approved to receive common fare meals.  Def.'s Stmt. ¶¶ 8-9; Pl.'s Stmt. ¶ 8.  The plaintiff continued to receive and refuse regular meal trays for lunch and dinner on September 25 and 26.  Def.'s Stmt. ¶ 4; Pl.'s Stmt. ¶ 10.  The defendant does not recall whether he was informed that the plaintiff had refused regular meal trays from September 22 to September 27.[6]  Def.'s Stmt. ¶ 17; Def.'s Ex. 1 (Jackson Aff.) ¶ 15.

On September 26, the plaintiff submitted a written Inmate Request to the defendant regarding the common fare meals he was supposed to receive.  Def.'s Stmt. ¶ 10; Pl.'s Stmt. ¶ 11.  The next day, September 27, he spoke to his unit manager about the issue, and he began receiving common fare meals for lunch and dinner.  Def.'s Stmt. ¶ 11; Pl.'s Stmt. ¶ 12.  On September 29, he received a response to his Inmate Request from Food Service Supervisor Kulp stating that he had been added to the approved list for common fare meal service.  Def.'s Stmt. ¶ 11, Pl.'s Stmt. ¶ 13.  The defendant never spoke directly with the plaintiff or had any personal interaction with him.  Def.'s Stmt. ¶ 14; Pl.'s Stmt. ¶ 14; Def.'s Ex. 1 (Jackson Aff.) ¶ 6.

III.   Analysis

The defendant argues that he is entitled to summary judgment because the plaintiff's First Amendment claim fails on the summary judgment record.  Def.'s Mem. at 6. Specifically, he argues that the failure to provide the plaintiff with common fare meals

---

[6] The plaintiff argues that the log book entries, which he attached to his opposition, show that the defendant was, in fact, informed that he had refused regular meal trays.  Pl.'s Mem. at 8; Pl.'s Ex. 3.  However, those entries only state that the defendant was contacted about the plaintiff's request for a common fare meal on September 23 and September 26.  They do not indicate whether the defendant was informed of the plaintiff's refusal of regular meals.

7

from September 23 to September 26 was, at most, negligent conduct which placed a *de minimis* burden on the plaintiff's ability to practice his religion. *Id.* I agree and, therefore, GRANT summary judgment for the defendant.

The Free Exercise Clause of the First Amendment requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Therefore, a prisoner's free exercise claim is "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (quoting *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988)). A government action challenged under the Free Exercise Clause "passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)).

In *Salahuddin*, the Second Circuit stated that, to state a plausible free exercise claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs," although it did not definitively so rule. 467 F.3d at 274–75 & n.5; *see also Kole v. Lappin*, 551 F. Supp. 2d 149, 154 (D. Conn. 2008) (inmate must show that disputed policy substantially burdens sincerely held religious

8

beliefs). "A substantial burden exists where the [government] 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Forde v. Zickefoose*, 612 F. Supp.2d 171, 177 (D. Conn. 2009) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). In evaluating whether the prisoner has made this showing, this Court does not "evaluate the objective reasonableness of the prisoner's belief . . ." *Ford*, 352 F.3d at 590. Rather, the Court's "scrutiny extends only to whether [the prisoner] sincerely holds a particular belief and whether the belief is religious in nature." *Id.* (internal quotations omitted).

More recently, the Second Circuit has made clear that the issue of whether the prisoner must make this threshold showing remains undecided. *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (declining to apply substantial burden test). Nevertheless, district courts in this Circuit continue to apply the substantial burden test in analyzing free exercise claims. *See*, *e.g.*, *Jones v. Annucci*, No. 16-CV-3516 (KMK), 2018 WL 910594, **13-14 & n.8 (S.D.N.Y. Feb. 14, 2018) (applying substantial burden test to inmate's claim that prison officials prohibited him from attending religious services; "This Court . . . will proceed under the assumption that the substantial burden test is still valid.").

If the prisoner states a plausible free exercise claim, the defendant then bears the limited burden of showing that the challenged conduct was reasonably related to legitimate penological interests. *Salahuddin*, 467 F.3d at 275; *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court examines a prisoner's free exercise claim with deference to the prison administrator. *Forde*, 612 F. Supp.2d at 180. Thus, the burden remains with the prisoner to show that the concerns articulated by the government actor were "irrational."

9

*Salahuddin*, 467 F.3d at 275 (internal quotations omitted); *see also Shakur v. Sieminski*, No. 3:07-CV-1239 (CFD), 2009 WL 2151174, *7 (D. Conn. Jul. 15, 2009) (court must balance religious right of prisoner against legitimate interest of officials in maintaining institutional security).

In this case, the plaintiff claims that the denial of common fare meals from September 23 to September 26 violated his right freely to exercise his Rastafarian religion. Pl.'s Mem. at 5. The Second Circuit has held that a prisoner's First Amendment right freely to exercise his religion includes the right "to receive diets consistent with [his] religious scruples." *Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990) (quoting *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975)); *see also Refaat El Badrawi v. United States*, No. 07-CV-1074 (JCH), 2011 WL 13086946, *4 (D. Conn. May 16, 2011). "[T]o deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004).

At the same time, however, the Second Circuit has recognized that not every possible restriction on a prisoner's religious practices amounts to a First Amendment violation. *McEachin*, 357 F.3d at 203 n.6. "There may be inconveniences so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim '*de minimis non curat lex*' applies." *Id.* Courts in this Circuit have applied this maxim to free exercise claims based on the failure of prison officials to provide inmates with a limited number of religion-approved meals. *See Lewis v. Zon*, 920 F. Supp.2d 379, 385 (W.D.N.Y. 2013) ("[I]t is well settled that the periodic or temporary denial of religious meals does not constitute 'substantial'

10

interference with free exercise, and is insufficient to establish a First Amendment claim"); *Brown v. Graham*, No. 9:07-CV-1353, 2010 WL 6428251, *15 (N.D.N.Y. Mar. 30, 2010) (interference with religious practices or beliefs must be more than inconvenience); *see also Hamilton v. Countant*, No. 13-CV-669 (RA), 2016 WL 881126, *4, *7 (S.D.N.Y. Mar. 1, 2016) (quoting *McEachin*, 357 F.3d at 203 n.6, and noting that "[c]ourts in this district have refused to impose liability where a prisoner is denied a limited number of meals that conform to his dietary restrictions . . . ."); *Evans v. Albany County Correctional Facility*, No. 9:05-CV-1400 (GTS), 2009 WL 1401645, *7 (N.D.N.Y. May 14, 2009) (same); *Tafari v. Annets*, No. 06-CIV-11360 (GMD) (AJP), 2008 WL 2413995 *16 (S.D.N.Y. Jun. 12, 2008) (same).

Whether on the basis of First Amendment "substantial burden" jurisprudence or the more general legal principle of *de minimis non curat lex* mentioned in *McEachin*, many courts have rejected First Amendment religious freedom claims based on isolated or temporary denials of religion-approved meals. *See Brandon v. Schroyer*, No. 9:13-CV-939 (TJM/DEP), 2016 WL 1638242, *17 (N.D.N.Y. Feb. 26, 2016) (denial of ten religious meals during one-year incarceration term was not "constitutionally significant" and did not violate plaintiff's First Amendment rights); *Watkins v. Donnelly*, 551 F. App'x 953, 960-61 (10th Cir. 2014) (denial of religious meals three times in one day was *de minimis* burden on free exercise rights); *Washington v. Afify*, 968 F. Supp.2d 532, 538 (W.D.N.Y. 2013) (few isolated deprivations of religiously-mandated food do not give rise to First Amendment claim); *Evans*, 2009 WL 1401645, *8 (denial of religious meal 18 out of 354 times did not substantially burden plaintiff's religious beliefs); *Thomas v. Picio*, No. 04-CIV-3174 (KMW) (RLF), 2008 WL 820740, *6 n.8 (S.D.N.Y. Mar. 26,

2008) (denial of kosher meals for one day did not substantially burden free exercise rights); *Norwood v. Strada*, 249 F. App'x 269, 272 (3d Cir. 2007) (denial of seven consecutive religious meals did not substantially burden plaintiff's free exercise rights).

In this case, the plaintiff alleges that, after he was transferred to Corrigan, he was denied common fare meals for lunch and dinner from September 23 to September 26. As noted, even on those days, the breakfast meal satisfied his religious beliefs. Construing the plaintiff's allegations as true, he was denied a total of eight common fare meals over four days. After he submitted an Inmate Request on September 26, the plaintiff began receiving common fare meals within twenty-four hours. Based on this evidence, the Court concludes that the interference with the plaintiff's First Amendment right freely to exercise his religion was *de minimis*. No reasonable jury could conclude that the denial of eight common fare meals over a four-day period substantially burdened the plaintiff's ability to practice his religion.

Moreover, the plaintiff has failed to establish that the defendant's failure to provide him with common fare meals on those dates was anything more than negligence or administrative error committed in connection with his transfer to a new facility. "[D]amages claims based solely on the negligent infringement of a prisoner's right to religious freedom are not actionable under . . . the First Amendment . . ." *Hamilton*, 2016 WL 881126, *4 (citing *Guillory v. Ellis*, No. 11-CV-600 (MAD), 2014 WL 4365274, *9 (N.D.N.Y. Aug. 29, 2014)); *see also Riehl v. Martin*, No. 9:13-CV-439 (GLS/TWD), 2014 WL 1289601, *10 (N.D.N.Y. Mar. 31, 2014) (conduct amounting to nothing more than negligence is not actionable under First Amendment). The evidence in the record shows that the defendant denied the plaintiff common fare meals from September 23 to

September 26 because the plaintiff was not on the approved list of common fare meal recipients. Although the plaintiff contends that he notified Corrigan staff upon arrival of his need for common fare meals and that the defendant was notified on at least two occasions about his request for such meals, there is no evidence suggesting that the defendant intentionally disregarded the plaintiff's requests or knowingly served him regular meals despite his religious requirements. *See Riehl*, 2014 WL 4365274, *10 (record does not support finding that presence of chametz in plaintiff's meal at first Seder was result of established prison policy or intentional disregard of plaintiff's right to receive religious-approved meal). Once the plaintiff filed the Inmate Request regarding the deprivation of such meals, he was added to the approved list, and the defendant began serving him common fare meals. At most, the plaintiff has established negligence on the part of the defendant for his failure to either (a) immediately approve the plaintiff for the common fare program, if that even was his responsibility (a point the defendant disputes), or (b) take more swift action to ensure he was approved for common fare meals after the plaintiff communicated to him through another officer that he required such meals. Regardless, neither of these claims are sufficient to establish a First Amendment violation. *See Odom v. Dixion*, No. 04-CV-889F (LGF), 2008 WL 466255, *11 (W.D.N.Y. Feb. 15, 2008) (denial of seven kosher meals over five-day period resulting from administrative error did not warrant relief under § 1983); *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (defendants' failure on two occasions to timely approve requests for religious accommodations amounted "at most, [to] isolated acts of negligence" and did not violate First Amendment); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[n]egligent acts by officials causing unintended denials of religious

rights do not violate the Free Exercise Clause"). Because the evidence shows that the plaintiff was, at most, denied eight common fare meals after being transferred to a new facility and before he had been added to the common fare meal list and that Corrigan officials took immediate action to correct the problem once the plaintiff filed his Inmate Request, no reasonable jury could conclude that the defendant violated the plaintiff's right freely to exercise his religion.

IV. Conclusion

The Court GRANTS the defendant's motion for summary judgment (ECF No. 24). The clerk is directed to enter judgment in favor of the defendant and close this case.

It is so ordered.

Dated at Hartford, Connecticut this 1st day of November 2018.

/s/<br>
Michael P. Shea<br>
United States District Judge